ELIZABETH K. SINNOTT V. MARGARET K. GIDNEY ET AL.

No. A-6872. Decided March 4, 1959.
(322 S.W. 2d Series 507)

*Lenihan & Ivers* and *Henry T. Ivers,* of Seattle, Washington, and *Peyton B. Randolph,* of Plainview, Texas, for petitioner.

*Lemon & Close* and *G. R. Close,* of Perryton, for respondents.

MR. JUSTICE WALKER delivered the opinion of the Court.

The question presented by this appeal is whether debts, funeral expenses, estate taxes and expenses of administration of the estate of Katie Keliehor, deceased, are payable out of the personal property bequeathed by Item Second of her will or the real property devised by Item Third. After the usual introductory recitals, the will reads as follows:

"*FIRST*: I direct that my Executrix, hereinafter named, pay from my estate all of my just debts and funeral expenses.

"*SECOND*: I give and bequeath to my sister, ELIZABETH K. SINNOT, all of my personal property of every kind and nature, of which I may die possessed, including all cash, stocks, bonds, bank accounts and savings and loan accounts, and including any personal property of any kind or nature which I may have received or which I shall have the right to receive from the Estate of my sister, ANNIE KELIEHOR, who departed this life on November 2, 1950.

"*THIRD*: All of the rest, residue and remainder of my estate, which is real property situated in the State of Texas, I give, devise and bequeath as follows, to-wit: One-fifth (1/5) to my sister, MARGARET GIDNEY, and in the event she does not survive me to her children share and share alike; one-fifth (1/5) to my sister ELIZABETH K. SINNOTT, and in the event she does not survive me to her children, share and share alike; one-fifth (1/5) to my brother, CHARLES J. KELIEHOR, and if he does not survive me to his children, share and share alike; one-fifth (1/5) to the surviving children of my sister, MARY BARNHART, now deceased * * * ; and one-fifth (1/5) to the surviving children of my brother, WILLIAM KELIEHOR, now deceased * * * *.

"*FOURTH*: I make no bequest to my brother, JOSEPH E. KELIEHOR, whom I love very much.

"*FIFTH*: * * * [Margaret Gidney and Elizabeth K. Sinnott appointed independent executrices without bond] * * * I direct that my Executrices herein named shall have full power and authority to mortgage, sell, exchange or otherwise dispose of the real property without an order of the Court for that purpose, and without notice, approval or confirmation, at such prices and upon such terms and conditions as to my Executrices shall seem just * * * *.

"*SIXTH*:: * * * [revokes former wills] * * * * ."

■ The trial court and Court of Civil Appeals held that the charges and expenses in question must be paid out of the personal property bequeathed to Mrs. Sinnott, who is petitioner here. 311 S.W. 2d 951. We have concluded that under the provisions of the will, the same are payable out of the proceeds of the land devised by Item Third. The other question decided by the Court of Civil Appeals has not been raised in this Court.

The testatrix, who never married, executed her will on

January 12, 1951, and died on June 21, 1952. The will was prepared by her lawyer. According to the estate tax return as filed, she owned at the time of her death an estate consisting of real property situated in Texas valued at approximately $160,000.00 and personal property worth about $153,000.00. The personal property consists almost entirely of stocks, bonds, savings and loan accounts and bank deposits. A substantial portion of the estate is comprised of property devised and bequeathed to the testatrix by her brother, Joseph E. Keliehor, who died on December 26, 1951. About $90,000.00 of the land and $13,000.00 of the personal property which she owned at the time of her death were acquired from this source. The debts, funeral expenses and expenses of administration on her estate aggregate about $18,-000.00, and the estate tax as finally determined is slightly more than $31,000.00. In addition to these charges, $1,018.54 was paid to the State of Texas under the provisions of Art. 7144a, Vernon's Annotated Texas Civil Statutes.

■ As a general rule the personal property of a decedent is the primary fund for the payment of debts and legacies. See Arnold v. Dean, 61 Texas 249. So long as sufficient assets are provided for the purpose, however, a testator may always determine the property that will ultimately bear the burden of debts and other legal charges against his estate. The question then is whether the intention of the testatrix as disclosed by the provisions of her will considered in the light of the circumstances surrounding its execution was that these charges should be paid from the real estate rather than the personal property.

■ The testatrix gave all of her personal property to petitioner and then devised all of the rest, residue and remainder of her estate, "which is real property situated in the State of Texas," to the beneficiaries designated in Item Third. In most wills the residuary clause embraces both realty and personalty, and it is generally held that a gift of this character has the effect of charging the residuary realty with the payment of debts and legacies if the residuary personalty is not sufficient to pay the same. See 4 Page on Wills, 3rd ed. 1941, p. 239, Sec. 1452, p. 287, Sec. 1479; Thompson on Wills, 3rd ed. 1947, p. 729, Sec. 506. It has been said that to operate as a charge of this sort, realty and personalty must be blended in the residuary clause, 4 Page on Wills, p. 244, Sec. 1453, Thompson on Wills, p. 729, Sec. 506, but there is no valid reason for such a rule today.

While many of the decided cases emphasize the fact that both types of property were covered by the residuary clauses there

involved, the blending of realty and personalty in the will can no longer be regarded as material to a determination of whether the testator intended to exonerate the personal property and charge his real estate with the payment of debts and legacies. As suggested by our opinion in Moerlin v. Heyer, 100 Texas 245, 97 S.W. 1040, at common law the realty went to the heir or devisee and did not constitute assets in the hands of the personal representative for the payment of either debts or legacies. These were payable out of the personal estate alone unless the will authorized their satisfaction out of the realty. Hence there was great significance in the fact that the will changed the course of the law by blending both characters of property into a common fund, provided for the payment of debts and legacies, and then disposed only of the residue. Under modern statutes, however, a decedent's entire estate both real and personal, with the exception of certain specified exemptions, is liable for the payment of debts and goes to the personal representative for purposes of administration. See Texas Probate Code, Sec. 37. Since the law thus blends the estate, real and personal, the mere fact that the will does or does not do so is of little consequence.

■ On the other hand, the gift by a testator of the "residue" or "rest, residue and remainder" of his estate is usually very significant. These expressions and words of similar import are ordinarily used in a will to refer to the portion of the estate that is left after all debts and legal charges have been paid and other testamentary gifts have been satisfied, and they have been given this construction by the courts on many occasions. The presumption is that the testator used them in that sense unless a contrary intention clearly appears. See Williams v. Smith, 146 Texas 269, 206 S.W. 2d 208. In the absence of testamentary provisions to the contrary, therefore, the residuary estate is to be applied in payment of debts and other charges before any of the property otherwise disposed of. See Plunkett v. Old Colony Trust Co., 233 Mass. 471, 124 N.E. 265, 7 A.L.R. 696; 97 C.J.S. Wills 233, Sec. 1320. This merely carries out the intention of the testator as expressed in the will.

■ Wills which first dispose of all of the personal property in general terms and then make a residuary devise of real estate are rather unusual, but the courts which have considered such instruments hold that the residuary realty rather than the personal property must bear the burden of legal charges against the estate, Smullin v. Wharton, 86 Neb. 553, 125 N.W. 1112, and pecuniary legacies, Reid v. Corrigan, 143 Ill. 402, 32 N.E. 387. It seems clear then that the provisions of the present will sup-

port petitioner's position unless it can be said that Item Third does something more than devise the rest, residue and remainder of the estate.

Respondents contend that the phrase "which is real property situated in the State of Texas" shows that the testatrix was not making a residuary devise of the land. They say that after directing that her debts and funeral expenses be paid out of her estate, she stated that the rest, residue and remainder of her estate was the land in Texas and specified the share which each benefiiciary should have. It is their position that Item Third is either a general or specific devise of all the Texas real estate to the beneficiaries designated therein. We do not agree.

The provision with respect to debts and funeral expenses shows the testatrix realized that some charges would be paid out of her estate. She nevertheless gave all of her personal property of every kind and nature to petitioner and specified that the gift should include all cash, stocks, bonds, bank accounts and savings and loan accounts, and any personal property received or receivable from the estate of her sister, Annie Keliehor, who had died about two months before the will was executed. If petitioner was to have all of the personal property as provided in this clause, then obviously none of it could be used for the payment of the debts and funeral expenses mentioned in the preceding paragraph. That this was the intention of the testatrix becomes clear when the provisions of Item Second are compared with those of Item Third. The latter clause does not purport to give "all" or "my" or "the" real estate situated in Texas. Instead it devises "all of the rest, residue and remainder of my estate" and merely declares that the same "is" real property situated in Texas.

The testatrix evidently contemplated that the executrices would sell only enough land to pay the charges against her estate. If that were done, the portion of her estate remaining after all personal property was delivered to petitioner and the legal charges were paid undoubtedly would be real estate situated in Texas, and that is what she said in the will. From a reading of the entire instrument, it is our opinion that Item Third is simply a residuary devise. The reference to realty situated in Texas was included merely to show the nature and location of the property constituting the residue of the estate, and does not evidence an intention to devise all of the Texas land to the designated beneficiaries. This is the only construction which harmon-

izes and gives meaning and effect to all of the provisions of the will.

The only land owned by the testatrix at the time of making her will was about 750 acres in Williamson County, which she inherited from her father and her sister, Annie. Respondents argue that she must have intended for this property to remain in the Keliehor family, but the power of sale conferred upon the personal representatives in Item Fifth of the will shows that she was not concerned about the land remaining in the family or passing to the residuary beneficiaries in kind. The Williamson County land is valued at approximately $70,000.00. Respondents insist that the testatrix clearly meant to leave something to members of her family other than petitioner, and that the residuary beneficiaries would have received very little if this had been the only property available for paying debts and charges amounting to more than $50,000.00. As a matter of fact the federal tax and probably the expenses of administration would have been considerably less if the estate at death had consisted only of the property owned by the testatrix when she made her will. Whether her estate is viewed as of that time or the time of her death, the real property was and is sufficient to pay all debts and charges and leave a substantial amount for the residuary beneficiaries.

■ In case of real doubt as to the meaning of a will, the law favors a construction that gives equal treatment to all heirs of the same class. The present instrument makes it quite clear, however, that the testatrix did not intend for her heirs to have equal treatment. She declared that nothing was being left to one brother and then gave petitioner all of the personal property plus one-fifth of whatever might pass under the residuary clause. The record discloses that she had been intimately associated for many years with her two sisters, Annie and petitioner, and the latter was obviously the primary object of her bounty. When only the nature and value of the property is considered, it might seem that a better plan for settling and dividing the estate would have been to allow the debts and charges to be paid out of the personalty, but the disposition provided in the will is not so unreasonable or unnatural as to suggest that the testatrix may not have meant for the language used therein to be given its usual, ordinary and legal meaning.

■ An exhaustive annotation dealing with the question of the "ultimate burden" of the estate tax where there is no apportionment statute and no tax clause in the will is found in 37 A.L.R.

2d 169. As there pointed out, the burden of the tax, other than the portion attributable to life insurance proceeds and property subject to a power of appointment, depends upon state law. See Thompson v. Thompson, 149 Texas 632, 236 S.W. 2d 799. Originally most jurisdictions where the question arose held that the funds or property which must bear the ultimate burden of the tax would be determined by the rules applicable to debts and expenses of administration. In the typical case the burden of the tax thus falls on the residuary estate, and this has often been stated as the basic rule governing same. Several states now have statutes providing for apportionment of the tax among all parts of the taxable estate and its beneficiaries. In a number of decisions, moreover, the apportionment doctrine has been recognized as applicable even in the absence of a statute, but these cases appear to involve the question of whether one who receives property constituting part of the taxable estate but which did not pass either by testamentary gift or descent must bear a pro rata share of the tax burden.

Texas has no apportionment statute, and we do not recognize the apportionment rule, at least where the taxable estate includes only testamentary assets. By testamentary assets is meant property passing under the will or by descent as distinguished from that which, although included in the taxable estate, is not part of the testamentary or intestate estate. In the absence of a provision in the will directing otherwise, the estate tax *attributable to testamentary assets* is not apportionable and the ultimate burden thereof is determined by the rules of law applicable to debts and expenses of administration. See Thompson v. Thompson, supra. This is not to say that the burden of the tax will necessarily be governed by testamentary provisions dealing with debts or expenses of administration, nor does it mean that the doctrine of equitable apportionment cannot be invoked against one who receives property that is included in the taxable estate but which is not a testamentary asset. See 37 A.L.R. 2d 183. The latter question was not decided in the Thompson case, and is not presented or decided here.

In the absence of a provision in the will to the contrary, each beneficiary receives his share or interest in the estate burdened with the "basic" inheritance tax which by the terms of Chapter 5, Title 122, of our statutes is imposed on the right to receive such share or interest. Norton v. Jones, Texas Civ. App., 210 S.W. 2d 820 (wr. ref.). As we understand the present record, however, the estate situated in Texas did not exceed the exemptions allowed by law, and no basic inheritance tax was

payable. The $1,018.54 mentioned above was assessed and paid under the provisions of Art. 7144a. This statute was enacted to take full advantage of the credit allowed against the federal estate tax for estate or inheritance taxes paid to any state. Its first three sections apply to estates that are subject to the payment of a basic inheritance tax, and Section 2 provides for apportionment of the additional tax among the beneficiaries in proportion to the amount of the basic tax assessed against each share or interest. Section 4 deals with the situation in which there is no basic inheritance tax liability. Unlike Section 2, it contains no apportionment provision and simply requires that the tax be paid out of the whole of the estate before partition and distribution. The tax imposed by the latter section is an additional estate tax. As between the beneficiaries of the estate, it is payable out of the same funds or property as the federal estate tax unless the will provides otherwise. See Simco v. Shirk, 146 Texas 259, 206 S.W. 2d 221.

The judgments of the courts below are reversed and the cause is remanded to the District Court with instructions to enter judgment requiring that the debt, expenses of last illness and funeral, estate taxes paid to the United States and to the State of Texas, and expenses of administration be paid out of the proceeds of the real estate devised by Item Third of the will, and otherwise conforming to the judgment heretofore entered by said Court on January 25, 1957.

Opinion delivered March 4, 1959.

Associate Justices Griffin and Hamilton not sitting.